GEORGE O'DAY ASSOCIATES, INC., Plaintiff,

v.

TALMAN CORPORATION and Talman Bigelow, Defendants.

Civ. A. No. 2646.

United States District Court
D. Rhode Island.

June 7, 1962.

Robert B. Russell, of Russell, Chittick & Pfund, Boston, Mass., Benjamin A. Smith, of Tillinghast, Collins & Tanner, Providence, R. I., John L. Saltonstall, Jr., of Hill, Barlow, Goodale & Adams, Boston, Mass., for plaintiff.

John H. Chafee, Edward F. Hindle, of Edwards & Angell, Providence, R. I., for defendant.

DAY, District Judge.

This is an action for alleged unfair competition and for alleged violation of Section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a). Jurisdiction of this Court exists under the provisions of 28 U.S.C.A. § 1332 and 15 U.S.C.A. § 1125(a).

From the evidence adduced at the trial it appears that during the year 1957 the plaintiff (now known as O'Day Corporation), being desirous of placing upon the market a safe family type fiberglass sailboat with planing ability, engaged the services of a well known designer to design such a boat; that at this time there were already several other makes and models of planing sailboats being offered for sale to the public; that thereafter, in August 1958, plaintiff began to make and sell a sailboat based upon the plans of said designer under the name of the "Day Sailer"; that it was ordinarily sold without a bracket or fixture on its stern to accommodate an outboard motor, but that at the option of a purchaser such a bracket or fixture was available at an added cost; and that said sailboat so designed enjoyed early substantial commercial success and has continued to do so.

In April 1959, the defendant Talman Bigelow, who had had some previous experience in the business of building and repairing sailboats, entered the employ of the plaintiff as assistant to its president in the solution of sales problems and in the coordination of activities between its factory and its dealers. He remained so employed until October 1959 when he was discharged for reasons not related to this case. While so employed he became fully aware of the plaintiff's advertising program, the sales potential of its sailboat, the identity of its dealers and plaintiff's financial arrangements with them, the extent of the commercial success of the "Day Sailer", and also to some extent with its deficiencies and complaints as to its alleged deficiencies.

After his discharge and while unemployed, the defendant Talman Bigelow began to consider the idea of establishing his own business to manufacture, buy and sell fiberglass planing sailboats which would be constructed and designed to carry an outboard motor without bracket or fixture, and without sacrificing the sailing potential of such a boat. Before taking any action in that direction he went to Florida where he spent about three weeks in a friend's factory observing and studying the construction of fiberglass outboard motor boats and their costs. Subsequently, in February 1960, he caused the defendant corporation to be organized for the purpose of engaging in the business of building, buying and selling sailboats. Shortly thereafter he purchased a "Day Sailer" from one of the plaintiff's dealers. He proceeded immediately to have certain changes and alterations made in its hull and deck. As modified, this sailboat was photographed and this photograph was used in initial advertising material describing the sailboat which the defendant corporation was offering for sale under the name of "Explorer". This initial advertising material indicated the defendant corporation was doing busi-

ness under the name of "Sailstar Boats" and set forth the location of its place of business in Warwick, Rhode Island.

It further appears that after the defendants had altered the hull of said "Day Sailer" so that it would carry an outboard motor without bracket or fixture for its attachment, and would have a different sheer they made a mold of said hull which was used for the construction of the hull of the "Explorer". In addition to the changes made in the shape and dimensions of said hull, the defendants incorporated in the "Explorer" numerous features not present in the "Day Sailer", such as a self-bailing cockpit, reinforcing members in the bottom of its hull to eliminate flexibility, a kicker-pit, a larger and differently positioned centerboard and rudder, styrofoam seats and a non-skid foredeck. Some of these features in the construction of the "Explorer" were adopted by the plaintiff in its sailboat after the "Explorer" was actually placed on display for sale. The evidence also establishes that the sail plan of the "Explorer" differs from that of the "Day Sailer" and that the insignia on its sails are completely different. In addition, every "Explorer" bears a conspicuous name plate securely affixed to its combing bearing the words "Sailstar", the trade name under which the defendant corporation does business, and the word "Explorer".

It is also clear from the evidence that the "Explorer" has likewise enjoyed substantial commercial success and constitutes strong competition for the plaintiff's product.

There was no evidence that any person had ever purchased an "Explorer" believing that he was buying the plaintiff's sailboat or that there was any confusion among prospective purchasers of sailboats as to the source of defendants' boat. In fact, the evidence showed clearly that prospective purchasers of sailboats universally exercise particular care and discrimination in buying them, and that there was no likelihood of confusion on their part as to the make they were con-

sidering for purchase or as to the identity of its manufacturer. In addition, there was no evidence or even suggestion that the defendants were "palming off" their sailboat as that of the plaintiff or that it was made by the plaintiff. As hereinbefore recited, each of defendants' boats bore a conspicuous label indicating its name and the name of its maker, and its advertising material clearly disclosed the source of said "Explorer".

Similarly, there was no evidence that the defendant Talman Bigelow wrongfully appropriated to his use any confidential information to which he had access while employed by the plaintiff. Any such contention is based purely on speculation and is not supported by the evidence.

■■ The mere copying or imitation of a competitor's design or product which is not protected by a patent, copyright or trademark does not in itself constitute unfair competition. It is well settled that in the absence of a monopoly such as is conferred by the ownership of a valid patent, copyright or trademark or, in the absence of a breach of a confidential relationship one may copy or imitate a competitor's design or product provided he does not "palm off" his product as that of his competitor, or the circumstances are such that there is a likelihood that prospective purchasers may regard his product as having been made by his competitor. Kellogg Co. v. National Biscuit Company, 1938, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73; American Safety Table Company, Inc. v. Schreiber & Goldberg, 1959, 2 Cir., 269 F.2d 255; Hawley Products Company v. United States Trunk Co., 1958, 1 Cir., 259 F.2d 69; Algren Watch Findings Co., Inc. v. Kalinsky, 1952, 2 Cir., 197 F.2d 69; Swank, Inc. v. Anson, Inc., 1952, 1 Cir., 196 F.2d 330; General Time Instrument Corp. v. United States Time Corp., 1948, 2 Cir., 165 F.2d 853; Cheney Bros. v. Doris Silk Corporation, 1929, 2 Cir., 35 F.2d 279; Bostitch, Inc. v. King Fastener Co., 1958, 87 R.I. 274, 140 A.2d 274, 768.

■ In my opinion the evidence in this case does not warrant a finding of either "palming off" or the likelihood of confusion on the part of the ordinary purchaser of sailboats. On the contrary, the evidence establishes there has been no "palming off" and that there is no likelihood of such confusion.

■ As hereinbefore pointed out, there was no showing by the plaintiff that the defendant Talman Bigelow, while employed by the plaintiff, gained access to any trade secrets of the plaintiff which he later wrongfully employed to his own advantage and that of the corporate defendant. It is undoubtedly true that while so employed he did acquire some general experience and knowledge about the construction and sales potential of fiberglass planing sailboats and the need for improvements in the plaintiff's product. This fact, however, would not prevent him after leaving the employ of the plaintiff from carrying on the same business and using for his own benefit the knowledge and experience he gained while so employed. Midland-Ross Corporation v. Yokana et al., 1961, 3 Cir., 293 F.2d 411; Bickley v. Frutchey Bean Company, 1959, D.C. Mich., 173 F.Supp. 516; Gaye v. Gillis, 1958, D.C.Mass., 167 F.Supp. 416. This rule is well stated in Midland-Ross Corporation v. Yokana et al., supra, 293 F. 2d at page 412 where the court said:

"* * * an employee after leaving the service of an employer may carry on the same business on his own and use for his own benefits the things he has learned while in the earlier employment. * * * Necessarily the former employee may use what he learned in the former employer's business while engaged in business for himself or some business competing with the former employer. * * *

"Equally clear is the proposition that the employee owes a duty of loyalty to the employer. He must not, while employed, act contrary to the employer's interests and, in general terms, owes a duty of loyalty as one of the incidents of the employer-employee relationship. * * *"

■ Here there was no evidence that the defendant Talman Bigelow made use of any confidential information acquired by him while in the employ of the plaintiff, but only that he used the general experience and knowledge which he gained while so employed, together with that which he acquired elsewhere. Under the circumstances his establishment of his own business in competition with the plaintiff does not amount to unfair competition.

■ Finally, the plaintiff contends that it is entitled to the relief it seeks because the defendants have violated the provisions of section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a). This contention is, in my opinion, without merit. Plaintiff concedes that the photograph used in the initial advertising material describing the sailboat the defendant corporation was planning to manufacture differed in some degree from its product. In other words, it was not an exact reproduction of the plaintiff's sailboat. In any event, there was no showing that the defendants' sailboat was not the same as that which was advertised or that it was in fact a sailboat of inferior or much cheaper quality than that shown in said advertising material. And there was clearly no false designation of its origin.

The cases of L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., 1954, 3 Cir., 214 F.2d 649 and Zandelin v. Maxwell Bentley Mfg. Co., 1961, D.C.N.Y., 197 F.Supp. 608, cited and relied upon by the plaintiff, are clearly distinguishable on their facts. In each of them the evidence was found to establish that the defendant therein was advertising its inferior and much cheaper product by using a picture of the plaintiff's product and thereby creating the impression that its product was identical with the plaintiff's and obtainable from it at a much lower price. No such situation is presented here. I

find that there has been no violation by the defendants of the provisions of section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a) which would entitle the plaintiff to the relief it seeks.

Finding and concluding, as I do, that the plaintiff has failed to establish by the required degree of proof that the defendants have been guilty of unfair competition or of any violation of said section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a), judgment will be entered for the defendants.