# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3543

_____

Mary Virginia Masters, also known as    *
Virginia E. Johnson,    *
   *
       Appellee,    *
   *
     v.    *
   *
UHS of Delaware, Inc.,    *
   *
       Appellant.    *

_____

No. 09-3700

_____

                                                Appeals from the United States
                                                District Court for the
                                                Eastern District of Missouri.

Mary Virginia Masters,    *
Virginia E. Johnson,    *
   *
       Appellant,    *
   *
     v.    *
   *
UHS of Delaware, Inc.,    *
   *
       Appellee.    *

_____

Submitted: September 21, 2010
Filed: January 6, 2011

_____

Before WOLLMAN, LOKEN, and HANSEN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

UHS of Delaware, Inc. (UHS) appeals from the judgment entered on a jury verdict of $2.4 million in favor of Mary Masters (Masters) on claims of service mark infringement under the Lanham Act and breach of contract. UHS contends that the district court[1] erred in concluding that Masters was eligible for monetary relief under the Lanham Act and in upholding an award based on disgorgement of profits. UHS also challenges the verdict, arguing that it is internally inconsistent and lacks sufficient evidentiary support. In her cross-appeal, Masters argues that the district court erred in denying her motion for prejudgment interest. We affirm.

I.

Masters, doing business as Virginia E. Johnson, and her late former husband, Dr. William H. Masters, were pioneers in the field of human sexuality. Together, they authored two books and developed treatment methods for the diagnosis and treatment of sexual dysfunction, from which they gained a considerable reputation in the field and the culture at large. As their stature grew, so too did the business opportunities in marketing their eponymous treatment method.

In 1991, Dr. and Mrs. Masters entered into a license agreement with UHS, which owns and operates a number of psychiatric hospitals and mental health facilities throughout the country. The agreement granted UHS use of the unregistered MASTERS AND JOHNSON service mark in connection with inpatient treatment programs conducted at its facilities. In 1995, Dr. and Mrs. Masters entered into

_____

[1]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

another license agreement with UHS for a term of ten years.  The license provided that:

> Licensor grants to Licensee a license, during the term of this Agreement, to utilize the Servicemark at all psychiatric hospitals and clinics managed or owned by Licensee or its parent company, Universal Health Services, Inc. in the treatment of sexual dysfunction and sexual trauma in accordance with the established methodology of Licensor.

Under the license agreement, UHS used the mark in association with its treatment programs.  The treatment programs admitted only patients whom a treating physician had referred.  To facilitate referrals, UHS sponsored seminars and workshops during which it pitched its programs to other physicians and mental health professionals.  UHS included the mark in promotional materials for these events and on various webpages of UHS facilities.  Although Dr. Masters was present during some of these workshops and seminars, the parties dispute the extent of his involvement in, and oversight of, the programs and promotional materials that made use of the mark.

Dr. Masters died in 2001.  The license agreement expired in 2005, and after negotiations for a new license failed, Mrs. Masters and UHS parted ways.  In December of 2006, Masters sued UHS, alleging that (1) UHS had breached the license agreement; (2) UHS had committed service mark infringement under 15 U.S.C. §1125(a) of the Lanham Act and Missouri common law; and (3) UHS had engaged in unfair competition under Missouri common law.  The unifying thread of Masters's claims was that UHS exceeded the scope of the license agreement by using the mark to promote treatment programs unrelated to sexual dysfunction and sexual trauma and to promote treatment methods unrelated to the established MASTERS AND JOHNSON methodology.

During the nine-day jury trial that commenced in late October 2008, Masters presented evidence that the mark had been used to promote treatment programs for

eating disorders, chemical dependency, and other addiction disorders. She also presented evidence that UHS used the mark to promote treatment methods—ranging from yoga to expressive dance to t'ai chi—that departed from the distinctive methodology the mark represents. Her expert testified that UHS had realized more than $320 million in gross revenues during the license term, and Masters contended that disgorging some of these profits was an appropriate remedy for UHS's infringing use of the mark.

UHS sought to bar Masters's suit on the basis of equitable defenses of acquiescence, laches, and estoppel and presented evidence that Masters knew, or should have known, how UHS had used the mark. It also asserted that its use of the mark was entirely within the scope of the agreement and claimed Dr. Masters had understood and approved of the manner in which UHS used the mark. It noted that it paid a total of $360,000 for use of the mark over the ten-year license term and that Masters never complained until the license expired. Its expert testified that UHS earned $6.5 million in net profits from its treatment programs during the license term, and UHS denied that any profits derived from unauthorized use.

At the close of evidence, UHS submitted a number of motions for judgment as a matter of law, arguing, among other things, that Masters had failed to present evidence sufficient to make a compensable claim under the Lanham Act. The district court rejected UHS's motions and submitted the case to the jury, which returned a verdict in Masters's favor, finding that UHS had willfully infringed the mark and breached the licensing agreement. When asked to determine what damages, if any, Masters had suffered, the jury responded: "None." It went on to award Masters $2.4 million of disgorged profits. UHS moved for judgment notwithstanding the verdict. The district court issued an order affirming the award over UHS's objection and denying Masters's motion for prejudgment interest.

II.

On appeal, UHS raises many of the arguments it made before the district court. We review *de novo* the denial of UHS's motions for judgment as a matter of law, applying the same standard as the district court. Tatum v. City of Berkeley, 408 F.3d 543, 549 (8th Cir. 2005). Where UHS challenges the sufficiency of the evidence, we review it in the light most favorable to the verdict and will not set it aside unless no reasonable jury could have reached the same verdict based on the evidence submitted. Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1009 (8th Cir. 2008).

A. Equitable Defenses

UHS contends that laches, acquiescence, and equitable estoppel bar Masters's claims. It argues that the district erred in denying its motion for judgment as a matter of law on the basis of its defenses and in submitting its defenses to the jury.

The equitable defenses presented fact-bound inquiries that were properly submitted to the jury. Laches applies in a trademark action when "a claimant inexcusably delays in asserting its claim and thereby unduly prejudices the party against whom the claim ultimately is asserted." Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 602 (8th Cir. 1999). Acquiescence may bar an infringement suit when "the owner of the trademark, by conveying to the defendant through affirmative word or deed, expressly or impliedly consents to the infringement." 3M Co. v. Intertape Polymer Group, Inc., 423 F. Supp. 2d 958, 965 (D. Minn. 2006). Similarly, estoppel bars a claim when an innocent defendant relies in good faith upon the claimant's misleading conduct or representations and changes its position to its detriment on the basis of that reliance. Hiland Potato Chip Co. v. Culbro Snack Foods, Inc., 720 F.2d 981, 984 (8th Cir. 1983).

UHS asserts that Masters knew, or should have known, of its open use of the mark in association with its treatment programs throughout the ten-year term and that her failure to bring the suit until after the license expired constitutes inexcusable, prejudicial delay. It also argues that Dr. Masters consented to its use of the mark, that it relied on that consent and Mrs. Masters's silence during the ten-year license term, and that Dr. Masters's consent should be imputed to Mrs. Masters under principles of partnership law. The factual underpinnings of UHS's equitable defenses, however, were disputed by Masters. Accordingly, the district court did not err in submitting the defenses to the jury.

Nor did the district court err in upholding the jury's determination. It instructed the jury that its verdict must be for the defendant if it found that UHS had proven laches, acquiescence, or estoppel by a preponderance of the evidence. The parties presented competing accounts of the underlying facts at issue, including what Masters knew and what she should have known about UHS's use of the mark, whether her husband had consented to its use, and, if so, whether his consent should be imputed to her. The jury resolved these factual questions in favor of Masters. Because substantial evidence supports that conclusion, we hold that the district court did not err in denying UHS's motion for judgment as a matter of law on its equitable defenses.

B. Scope of Use Permitted Under the Licensing Agreement

UHS contends that Masters presented no evidence that it exceeded the scope of the license agreement and therefore failed to establish liability under the Lanham Act. It reads the licensing agreement to encompass only the "service" of treating sexual dysfunction and asserts that Masters never established that UHS's use of the mark while rendering this service breached the terms of the agreement. According to UHS, any other use of the mark, including its presence in advertising materials and

promotions for UHS seminars, does not constitute "use in commerce" under the Lanham Act and is therefore an improper evidentiary basis for imposing liability.

Section 43(a) of the Lanham Act imposes liability on "[a]ny person who . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of goods, services, or commercial activities." 15 U.S.C. §1125(a)(1)(A). UHS contends that the only "service" it provided in association with the mark was treatment of sexual trauma, which it had a right to do under the license agreement. Because UHS complied with the agreement, the argument goes, Masters cannot prove that its use was likely to cause confusion and UHS is not liable for infringement of the mark.

The unspoken assumption that drives UHS's theory is that the mark was "used in commerce" when UHS provided treatment to patients, but not when it appeared in promotional materials of its treatment programs. This assumption is unsustainable in view of Section 45 of the Lanham Act, which defines when a servicemark is being "use[d] in commerce." Section 45 provides:

> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this Chapter, a mark shall be deemed to be in use in commerce . . . on services *when it is used or displayed in the sale or advertising of services* and the services are rendered in commerce . . . .

15 U.S.C. §1127(2) (emphasis added). Under this definition, the MASTERS AND JOHNSON mark was "used in commerce" when it appeared in promotional materials designed to market UHS treatment programs. It also was "used in commerce" during workshops and seminars when UHS pitched its treatment programs to physicians and other health professionals to facilitate more patient referrals.

Masters provided the jury with evidence that UHS used the mark in association with treatment programs unrelated to sexual trauma and treatment methods unrelated to the established MASTERS AND JOHNSON methodology that the mark represents. The jury found that by doing so, UHS willfully breached the agreement, a finding that is supported by the evidence. Because UHS misreads relevant provisions of the Lanham Act and ignores evidence the jury found credible, we reject the analytic premises it provides and the conclusions it derives therefrom.

## C. Propriety of the Damages Award

UHS next alleges that the monetary award is improper as a matter of law and presses a litany of reasons in support of its argument, three of which we deem worthy of discussion. First, UHS claims that an injunction, rather than monetary relief, should be the exclusive remedy available to Masters. Next, it claims that willful infringement is a necessary prerequisite to award damages and that insufficient evidence exists to support the jury's finding of willful infringement. Finally, UHS argues that a monetary award is improper because Mrs. Masters failed to prove that actual confusion resulted from its infringement of the mark.

### 1. Injunctive Relief

Although injunctive relief is often the preferred remedy in resolving trademark disputes, it is not the exclusive remedy. We have acknowledged that "all Lanham Act remedies are equitable in nature" and that "[t]here might be some situations in which a Lanham Act plaintiff would be entitled to monetary but not injunctive relief[.]" Minn. Pet Breeders, Inc. v. Schell & Kampeter, Inc., 41 F.3d 1242, 1247 (8th Cir. 1994). For example, the Lanham Act contemplates that a disgorgement or accounting of profits may be appropriate to remedy unfair infringement. 15 U.S.C. § 1117(a). We have recognized that upon proof of willful infringement, "an accounting of profits

may be based upon 1) unjust enrichment, 2) damages, or 3) deterrence of a willful infringer." Minn. Pet Breeders, Inc., 41 F.3d at 1247.

Moreover, injunctive relief was not sufficient to do equity here. When Masters brought suit, the license term had ended and UHS maintained that it had cut off all association with the MASTERS AND JOHNSON mark. An injunction under these circumstances would enjoin activity that appears unlikely ever to occur again and would, therefore, amount to a remedy in name only. Accordingly, the district court did not err when it determined that monetary relief was appropriate, were the jury to conclude that UHS willfully infringed the mark.

## 2. *Willful Infringement*

The evidence was sufficient to support the jury's finding that UHS willfully infringed the mark.[2] UHS presented evidence that raised a reasonable inference that

---

[2]A circuit split exists concerning whether a Lanham Act plaintiff must prove willful infringement, rather than mere infringement, to be eligible for monetary damages under 15 U.S.C. § 1125(a). The question turns on the effect of amendments to the Lanham Act Congress made in 1999. Compare Synergistic Int'l., LLC v. Korman, 470 F.3d 162, 175 n.13 (4th Cir. 2006) (concluding that amendments removed willfulness as a prerequisite for awarding profits under §1125(a)); Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 174-75 (3d Cir. 2005) (same) with W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc., 427 F.3d 1269, 1272-73 (10th Cir. 2005) (adhering to pre-amendment precedent regarding §1125(a) and requiring proof of willfulness to sustain the cause of action); Contessa Foods Prods. Inc. v. Lockpur Fish Processing Co., 123 F. Appx. 747, 751 (9th Cir. 2005) (same). See also 5 J. McCarthy, McCarthy on Trademarks and Unfair Competition §30:62 (4th ed. 2010) (criticizing circuit courts that have removed the willfulness requirement from §1125(a) on the basis of the 1999 amendments and arguing that such circuits "have leveraged this statutory change beyond its intended scope"). For purposes of adjudicating this appeal, we assume, without deciding, that willful infringement is a prerequisite of monetary relief.

UHS executives and other employees knowingly elided the terms of the agreement to their advantage. This evidence included testimony from employees regarding the use of the mark as well as images from various webpages documenting the use of the mark to promote different treatment programs. Other evidence showed that UHS's marketing or branding activities evolved over time to expand the use of the mark and associate it with treatment programs unrelated to sexual dysfunction and sexual trauma. We cannot say that no reasonable jury would conclude that UHS willfully infringed the mark on the basis of the evidence. We therefore reject UHS's argument regarding the sufficiency of the evidence on this issue.

*3. Actual confusion*

UHS next contends that Masters failed to prove actual confusion as between the parties or their business activities and therefore failed to establish a compensable claim. This issue presents a closer question. Our cases interpreting the Lanham Act state that actual confusion is a prerequisite of monetary damages and likelihood of confusion a prerequisite to injunctive relief. See, e.g., Woodsmith Publ'g Co. v. Meredith Corp., 904 F.2d 1244, 1247 n.5 (8th Cir. 1990) (citing Co-rect Prods., Inc. v. Marvy! Adver. Photography, Inc., 780 F.2d 1324, 1329-30 (8th Cir. 1985)). On closer examination, however, these cases do not yield the bright-line rule that UHS would have us apply here.

UHS contends that the relevant case law precludes the award of monetary relief absent proof of actual confusion. Masters urges that such proof is unnecessary in light of the licensor-licensee relationship of the parties, the nature of the infringement alleged, and the remedy of disgorged profits. We agree. Neither the relevant statutes nor our previous case law dictates that we require actual confusion to support the jury's award in this case. Accordingly, we hold that the district court did not err in denying UHS's motion for judgment as a matter of law.

The Lanham Act assigns civil liability to any company that uses in commerce any term or name that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . ." 15 U.S.C. §1125a(1)(A). Violation of this provision entitles a plaintiff, "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. §1117(a). The relevant statutory provisions do not expressly require proof of actual confusion, and the use of the conjunctive "and" in the delineation of remedies invites a distinction between an award of a defendant's profits and an award of plaintiff's damages. That distinction is helpful in understanding both the origins and the limited application of the actual confusion requirement.

The rule requiring proof of actual confusion does not derive from the text of the Lanham Act itself, but from our prior cases. It is true that at least one of our prior cases has unequivocally stated by way of a footnote that actual confusion is required to support an award of damages. See Woodsmith Publ'g Co., 904 F.2d at 1247 n.5. But in that case we affirmed the district court's summary judgment based on an absence of even a likelihood of confusion. Id. at 1250. The case did not require us to decide whether actual confusion is a prerequisite for an award of damages, and the statement on that issue is dicta we are not bound to follow. See Passmore v. Astrue, 533 F.3d 658, 661 (8th Cir. 2008) ("[W]e need not follow dicta.") (quotations omitted). Likewise, in Co-Rect Products, Inc.v. Marvy! Advertising Photography, Inc., 780 F.2d 1324 (8th Cir. 1985), upon which Woodsmith relied, we disposed of the issue on the merits without considering whether actual confusion existed. The court stated that a showing of actual confusion "entitles the owner of the mark to damages . . ." and that "[i]f . . . the use of that mark by another . . . causes actual confusion, the owner is entitled to damages." Id. at 1330. This is a positive statement—actual confusion entitles plaintiff to damages—and does not imply the converse: a plaintiff cannot recover damages without a showing of actual confusion.

-11-

Finally, in <u>Minnesota Pet Breeders, Inc. v. Schell & Kampeter, Inc.</u>, 41 F.3d 1242, 1247 (8th Cir. 1994), our court did not resolve the question of the necessity of actual confusion because it disposed of the case on other grounds. Consequently, none of those cases binds us to require actual confusion to support an award for monetary relief, including disgorgement of profits.

Moreover, the facts of this case illustrate why requiring actual confusion would undermine the equitable nature of the Lanham Act's remedial scheme. In a typical trademark case, the plaintiff alleges that the defendant's mark or trade dress is confusingly similar to its own. <u>See, e.g.</u>, <u>Minn. Pet Breeders, Inc.</u>, 41 F.3d at 1247; <u>Woodsmith</u>, 904 F.2d at 1244; <u>Co-rect Prods., Inc.</u>, 780 F.2d at 1324. The plaintiff may prove actual confusion "through the use of direct evidence, i.e., testimony from members of the buying public, as well as through circumstantial evidence, e.g., consumer surveys or consumer reaction tests." <u>Conopco, Inc. v. May Department Stores Co.</u>, 46 F.3d 1556, 1564 (Fed. Cir. 1994) (citation omitted). The analysis compares the two products or services in search of some objective characteristic that provides an empirical basis for assessing the plaintiff's claim.

This case involves a different kind of comparison, i.e., between the use of the mark the licensing agreement grants and UHS's actual use of the mark. In undertaking this comparison, it is difficult to discern what extrinsic proof of actual confusion—whether in the form of direct testimony or consumer surveys—could possibly contribute to the analysis. There are no objective characteristics by which to compare UHS and Masters because they were not competitors in the marketplace, but parties to a contract for use of a single mark. Accordingly, the degree of similarity is simply not a relevant criterion. Instead, the relevant criterion is the degree to which each party remained faithful to the terms of the license agreement.

Masters alleged, and the jury found, that UHS willfully infringed the mark by 1) using it to promote programs unrelated to sexual trauma or dysfunction, such as

-12-

chemical dependency and eating disorders; and 2) using it to promote treatment techniques, such as yoga, expressive dance, and t'ai chi, that are unrelated to the methodology for which the mark and its namesakes, Dr. and Mrs. Masters, had become well-known. The jury determined that disgorgement of UHS's profits was appropriate in light of such willful infringement. Proof of actual confusion is not necessary to sustain that conclusion.

Section 1117 makes an award of the infringing party's profits subject only to the principles of equity. Disgorgement exists to deter would-be infringers and to safeguard against unjust enrichment. Where the jury disgorges profits to remedy a willful infringement that was likely to cause confusion, to cause mistake, or to deceive as to the relationship between the parties' services, equity does not require adherence to the putative judge-made rule requiring actual confusion. This interpretation sensibly connects the unique facts of this case to the underlying equitable principles that animate the Lanham Act. Other circuits have rejected the notion that actual proof of confusion is always necessary to recover profits under the Lanham Act. See Gracie v. Gracie, 217 F.3d 1060, 1068 (9th Cir. 2000) (holding that eligibility for monetary relief under 15 U.S.C §1114 of the Lanham Act "requires only a *likelihood* of confusion combined with *willful* infringement") (emphasis in original); Wynn Oil Co. v. Am. Way Serv. Corp., 943 F.2d 595, 606-07 (6th Cir. 1991) (rejecting claim that plaintiff must prove actual confusion before he can recover profits from an infringer).

It stands to reason that UHS's unauthorized use of the MASTERS AND JOHNSON mark lent credence and legitimacy to programs and methods divorced from the intellectual theories that the mark symbolized. Using the mark to promote unrelated treatment programs and methods necessarily adulterates what the mark represents, i.e., a discrete approach for treating sexual dysfunction. By branding with Masters's mark treatment offerings that did not fall within the terms of the agreement, UHS acted in a way likely to cause confusion, to cause mistake, and to deceive others (including physicians and their patients) as to Masters's approval of those

unauthorized programs. Such a violation entitles Masters to a disgorgement of UHS's profits, subject to principles of equity.

D. Challenges to the Verdict

UHS first contends that Masters was ineligible to recover profits because the jury answered "none" to the specific interrogatory asking it to fix Masters's damages. An award of monetary relief under the Lanham Act must be compensatory, not a penalty. 15 U.S.C. § 1117(a). It does not follow, however, that a finding of damages is a precondition of any monetary award. As noted above, a finding of willful infringement may justify an accounting of profits "based upon 1) unjust enrichment, 2) damages, or 3) deterrence of a willful infringer." Minn. Pet Breeders, Inc., 41 F.3d at 1247; see also Bishop v. Equinox Int'l Corp., 154 F.3d 1220, 1223 (10th Cir. 1998) (finding that the absence of actual damages does not preclude an award of defendant's profits, which may deter willful infringement or prevent unjust enrichment); Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749, 753 (2d Cir. 1996) (same).

The $2.4 million verdict is not punitive in nature, but rests on the valid rationale of preventing unjust enrichment. The theory of the case Masters presented to the jury focused on the ways in which UHS used the mark to its advantage in marketing an array of treatment programs and methods at its facilities. That use was not part of the agreement the parties struck, and any profits earned from unauthorized use exceeds the benefit for which UHS bargained. Furthermore, the evidence was sufficient to support the verdict. Masters's expert estimated gross revenues at more than $300 million during the relevant period, and UHS's own expert testified that its net profits from the treatment programs exceeded $6 million. These numbers provide a reasonable basis from which the jury could determine that disgorging $2.4 million in profits was necessary to prevent UHS from being unjustly enriched.

UHS maintains that the award is excessive and that the district court erred as a matter of law when it did not reduce the award. Under 15 U.S.C. §1117(a), the district court has discretion to award monetary relief itself or to increase or decrease the jury's award of profits. See Metric & Multistandard Components Corp. v. Metric's Inc., 635 F.2d 710, 715 (8th Cir. 1980). Here, the district court considered UHS's claim that it should rescind or reduce the award and declined to do so. Though the district court's order upholding the award was brief to the point of being cryptic, the expert testimony on UHS's gross revenues and net profits during the license term provides sufficient evidentiary support for its decision. In sum, the finding that Masters suffered no actual damages does not of itself preclude the award, sufficient evidence exists for a reasonable jury to disgorge $2.4 million in profits on the theory of preventing unjust enrichment, and the district court did not err as a matter of law when it upheld that award.

UHS also challenges the verdict on the grounds that it is internally inconsistent. It avers that a finding of no actual damages in a specific interrogatory does not comport with the award and asserts that under Fed R. Civ. P. 49(b)(3), this panel should adjust the general verdict to cohere with the specific interrogatory (i.e. rescind the award altogether) or vacate the judgment and remand the matter for new trial. We have recognized that appellate courts have a duty "to harmonize inconsistent verdicts, viewing the case in any reasonable way that makes the verdicts consistent." Anheuser-Busch, Inc. v. John Labatt Ltd., 89 F.3d 1339, 1347 (8th Cir. 1996); see also 9B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2513 (3d ed. 2008) (recognizing that "it is the duty of the district court to reconcile the jury's general verdict and its interrogatory responses if reasonable reconciliation is possible").

Here, it is possible to follow the jury's reasoning and to reconcile its specific findings on the verdict form without altering the result. The progression of decisions the jury made as it worked through the verdict form is logically coherent and reveals

-15-

a rational basis for the jury's decision. The jury was first asked to find in favor of Masters or UHS on both the breach of contract and infringement claims. Finding for Masters on both, it was asked to fix her actual damages. After finding no actual damages, it was asked to determine whether UHS willfully engaged in trademark infringement. Only after it had indicated that UHS had willfully infringed the mark did the jury calculate what, if any, profits Masters was entitled to receive. As noted above, the expert testimony from both parties supplied a basis on which the jury could reasonably ground its $2.4 million award. We defer to the jury's judgment, and thus we uphold award.

## III.

Masters appeals the district court's denial of its motion for an award of prejudgment interest. We review the district court's ruling on prejudgment interest for an abuse of discretion. Children's Broad. Corp. v. Walt Disney Co., 357 F.3d 860, 868 (8th Cir. 2004). "[P]rejudgment interest should ordinarily be granted unless exceptional or unusual circumstances exist making the award of interest inequitable." Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 752 (8th Cir. 1986). To prevail, Masters must show that the district improperly weighed the equities and abused its discretion in not awarding prejudgment interest.

The district court did not abuse its discretion in denying Masters's motion for prejudgment interest. It determined that the award adequately compensated Masters and that it would be inequitable to award the interest, noting, among other things, that the defenses advanced by UHS were not baseless, vexatious, or unreasonable. We see no reason to disturb this finding.

## IV.

The judgment is affirmed.

_____

-16-