# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 18-2990

———————————————

Safeway Transit LLC; Aleksey Silenko

*Plaintiffs - Appellants*

v.

Discount Party Bus, Inc., an inactive Minnesota corporation; Party Bus MN LLC,
a Minnesota limited liability company; Adam Fernandez

*Defendants - Appellees*

————————

Appeal from United States District Court
for the District of Minnesota

————————

Submitted: December 11, 2019
Filed: April 6, 2020

————————

Before SMITH, Chief Judge, GRASZ and STRAS, Circuit Judges.

————————

SMITH, Chief Judge.

Safeway Transit LLC ("Safeway"), a party-bus company and its proprietor,
Aleksey Silenko, brought suit against Discount Party Bus, Inc.; Party Bus MN LLC;

and DPB's owner, Adam Fernandez,[1] alleging, among other things, federal trademark infringement under the Lanham Act, in violation of 15 U.S.C. § 1125(a), and deceptive trade practices, in violation of Minn. Stat. § 325D.44. Safeway alleged that DPB infringed two unregistered description trademarks—"Rent My Party Bus" and "952 Limo Bus." Safeway and Silenko requested a permanent injunction, disgorgement of profits, and attorney's fees. Following a bench trial, the district court[2] permanently enjoined DPB and Fernandez "from using or contributing to the use of the 'Rent My Party Bus' and '952 Limo Bus' trademarks or related domain names, keywords, or hashtags in connection with the advertisement, marketing, or sale of transportation services." *Safeway Transit LLC v. Disc. Party Bus, Inc.*, 334 F. Supp. 3d 995, 1009 (D. Minn. 2018). However, the district court denied Safeway and Silenko's (1) request for a disgorgement of profits, and (2) request for attorney's fees. On appeal, Safeway and Silenko appeal the district court's denial of these two requests. We affirm.

## I. *Background*

In approximately 2000, Fernandez started Party Bus MN, which was the first party-bus company in the Twin Cities region. In 2004, Fernandez formed Discount Party Bus Co., LLC. It began using "Party Bus MN" as a business name no later than 2004. Prior to 2008, DPB used "Party Bus MN," "Rent My Party Bus," and "952 Limo Bus" in print advertising, including on fliers that Fernandez distributed. DPB did not use any of the terms online before 2008.

---

[1]Fernandez is the sole owner, officer, and employee of Discount Party Bus, Inc. and Party Bus MN LLC, which operate as a single entity. Hereinafter, we will refer to "Discount Party Bus, Inc."; "Party Bus MN LLC"; "Discount Party Bus Co., LLC"; "Party Bus MN"; and Fernandez collectively as DPB, unless otherwise specified.

[2]The Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota.

In September 2008, Silenko formed Party Bus MN LLC and registered the domain name partybusmn.com. A month later, Silenko changed its name to Safeway Transit LLC and registered the domain name rentmypartybus.com. Safeway is a competing party-bus company serving the Twin Cities region. Since Safeway's inception, Silenko has been its director of business, responsible for budgeting, marketing, and operations. On its first bus in 2008, Safeway displayed a "Rent My Party Bus" decal. From 2008 to at least 2015, Safeway displayed decals with one or more of the following terms: "Rent My Party Bus," "952 Limo Bus," and "Party Bus MN."

In 2009, DPB stopped using the terms "Rent My Party Bus," "952 Limo Bus," and "Party Bus MN" because Safeway had begun using them. By 2009, Safeway was using "Rent My Party Bus" in print advertising, including on fliers that Silenko distributed, and operating a website at rentmypartybus.com. In 2009, Safeway registered some or all of the domain names discountpartybus.com, discountpartybuses.com, and discountpartybusesmn.com.[3] That same year, DPB sent the first cease-and-desist letter to Safeway regarding these three domain names. Between 2009 and 2014, DPB sent a total of four letters to Safeway about these domain names.

By 2010, Safeway was operating a website at partybusmn.com that forwarded visitors to the rentmypartybus.com site. Also, in 2010, Fernandez converted Discount Party Bus Co., LLC to Discount Party Bus, Inc.

In 2011, Safeway began using the phone number 952-LIMO-BUS to market its "952 Limo Bus" brand. Also, by 2011, Safeway was using "Party Bus MN" and "Rent My Party Bus" for online advertising with Facebook and using the term "952

---

[3]By 2014, Safeway had registered all three domain names.

Limo Bus" for online advertising with Facebook and Google AdWords. In May 2011, Safeway registered the domain name 952limobus.com.

Beginning in 2013, Safeway used "952 Limo Bus" in print advertising, including in Lavender magazine and on business cards that drivers distributed, and it operated a separate website at 952limobus.com. Also, by 2014, Safeway was using "Party Bus MN" and "Rent My Party Bus" for Twitter accounts.

In March 2014, DPB sued Safeway and Silenko in state court. Neither the cease-and-desist letters sent from DPB from 2009 to 2014 nor the state-court action involved the rentmypartybus.com, 952limobus.com, or partybusmn.com domain names. Instead, the state-court action concerned the domain names discountpartybus.com, discountpartybuses.com, and discountpartybusesmn.com. On April 30, 2014, the parties settled, agreeing that Safeway would transfer the DPB-related domain names to DPB in exchange for a release of liability. The next day— instructed by counsel—Fernandez formed Party Bus MN LLC. The company then filed assumed name certificates for the names "Rent My Party Bus" and "952 Limo Bus."

"In November 2014, Fernandez—through Party Bus MN LLC—filed for two Minnesota trademarks." *Safeway Transit LLC*, 334 F. Supp. 3d at 1002. He first "filed for the mark '952 Limo Bus,' stating that the business first used the mark in 2006 and submitting for support *Safeway's* '952 Limo Bus' logo." *Id.* (emphasis added). He next "filed for the mark 'PartyBusMN,' stating that the business first used the mark in 2002 and submitting for support a copy of the DPB website with a 'Party Bus MN' logo apparently superimposed over the top." *Id.*

At the same time, DPB's counsel filed for two federal trademarks. "First, counsel filed for the mark 'Rent My Party Bus,' stating that the business had used the mark since at least 2002 and submitting for support a specimen purportedly from

-4-

DPB's website that was really from Safeway's." *Id.* DPB's counsel thereafter filed an application for correction. "Second, counsel filed for the mark '952 Limo Bus,' asserting an intent to use and later, by amendment, asserting use since at least 2004." *Id.* According to Fernandez, he did not register the marks to use them; instead, he registered the marks to stop Safeway from using them.

In May 2015, DPB hired Internet Local Listings (ILL) to improve its presence on the web. "ILL used ten keywords—including '952 Limo Bus' and 'Rent My Party Bus'—for search engine optimization on Google Places." *Id.* DPB then began operating a website at discountpartybussaintpaulmn.com that displayed the terms "952 Limo Bus" and "Rent My Party Bus" in multiple locations; specifically, the terms were displayed in page URLs, text, and hyperlinks. In addition, DPB "used the terms as hashtags in social media postings on both Facebook and Twitter." *Id.* Fernandez and DPB's intent was "to bolster DPB's placement in search results when users searched for the terms at issue." *Id.*

In August 2015, Fernandez filed complaints with the Internet Corporation for Assigned Names and Numbers (ICANN). ICANN is "the organization responsible for managing domain names." *Id.* Fernandez "alleg[ed] that he was the rightful owner of 952limobus.com and rentmypartybus.com and request[ed] that the domains be transferred to him." *Id.*

On September 21, 2015, Safeway and Silenko (collectively, "Safeway") brought suit against DPB and Fernandez. Safeway alleged fraudulent federal registration, 15 U.S.C. § 1120 ("Count 1"); cancellation or assignment of federal registration, 15 U.S.C. § 1119 ("Count 2"); federal trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a) ("Count 3"); cancellation of state registration, Minn. Stat. § 333.25 ("Count 4"); fraudulent state registration, Minn. Stat. § 333.27 ("Count 5"); and deceptive trade practices, Minn. Stat. § 325D.44 ("Count 6"). In

October 2015, Safeway added a claim for reverse domain hijacking, 15 U.S.C. § 1114(2)(D)(v) ("Count 7").

Safeway moved for summary judgment on its claims for federal trademark infringement and reverse domain hijacking (Counts 3 and 7), but the district court denied Safeway's motion. Soon thereafter, the parties reached a partial settlement. They jointly requested a bench trial on the remaining issues. Safeway agreed to dismiss its claims related to registration of the trademarks and domain names in exchange for DPB withdrawing the registrations.[4] Safeway's remaining claims for federal trademark infringement (Count 3) and state deceptive trade practices (Count 6) were tried to the district court.

Following a bench trial, the district court permanently enjoined DPB "from using or contributing to the use of the 'Rent My Party Bus' and '952 Limo Bus' trademarks or related domain names, keywords, or hashtags in connection with the advertisement, marketing, or sale of transportation services." *Safeway Transit LLC*, 334 F. Supp. 3d at 1009. However, the district court denied Safeway's (1) request for a disgorgement of profits, and (2) request for attorney's fees.

## II. *Discussion*

Safeway appeals the district court's denial of their (1) request for a disgorgement of profits, and (2) request for attorney's fees.

### A. *Disgorgement of Profits*

Safeway first argues that the district court erroneously denied its request for disgorgement of profits under the Lanham Act. *See* 15 U.S.C. § 1117(a).

---

[4]In May 2016, the two state registrations and the two federal registrations that Party Bus MN LLC had filed for were cancelled.

We review for an abuse of discretion the district court's denial of disgorgement of profits under 15 U.S.C. § 1117(a). *See Qwest Commc'ns Corp. v. Free Conferencing Corp.*, 837 F.3d 889, 899 (8th Cir. 2016) ("[W]e review a district court's decision to deny an equitable remedy for abuse of discretion."); *Parke v. First Reliance Standard Life Ins.*, 368 F.3d 999, 1006 n.5 (8th Cir. 2004) ("Disgorgement of profits results from a court's determination that an accounting for profits is an appropriate equitable remedy.").

"[T]he Lanham Act contemplates that a disgorgement or accounting of profits may be appropriate to remedy unfair infringement." *Masters v. UHS of Del., Inc.*, 631 F.3d 464, 471 (8th Cir. 2011) (citing 15 U.S.C. § 1117(a) (permitting a successful plaintiff, "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action")). But "the Lanham Act does not permit the award of monetary relief as a penalty." *Minn. Pet Breeders, Inc. v. Schell & Kampeter, Inc.*, 41 F.3d 1242, 1247 (8th Cir. 1994) (citing 15 U.S.C. § 1117(a)). "[B]ecause the Act is grounded in equity and bars punitive remedies, an accounting will be denied in a trademark infringement action where an injunction will satisfy the equities of the case." *Id.* (internal quotation omitted). Thus, "an injunction is the preferred Lanham Act remedy." *Id.*

"Although injunctive relief is often the preferred remedy in resolving trademark disputes, it is not the exclusive remedy." *Masters*, 631 F.3d at 471. We have previously recognized "that 'all Lanham Act remedies are equitable in nature' and that '[t]here might be some situations in which a Lanham Act plaintiff would be entitled to monetary but not injunctive relief[.]'" *Id.* (alterations in original) (quoting *Minn. Pet Breeders, Inc.*, 41 F.3d at 1247). "For example, the Lanham Act contemplates that a disgorgement or accounting of profits *may* be appropriate to remedy *unfair infringement*." *Id.* (emphases added) (citing 15 U.S.C. § 1117(a)).

-7-

Here, the district court awarded the "preferred remedy" of injunctive relief to Safeway. *See Minn. Pet Breeders, Inc.*, 41 F.3d at 1247. But Safeway maintains that the injunction is "a remedy in name only because [DPB] was going out of business." Appellants' Br. at 25; *see also id.* at 55 (citing *Masters*, 631 F.3d at 471). Additionally, it argues that the district court abused its discretion in denying its request for disgorgement of profits because the court "implicitly and erroneously applied [the] equitable doctrines" of the "unclean hands defense and the advice of counsel defense." *Id.* at 24. And, it maintains, the district court erroneously declined to award an accounting of profits based on unjust enrichment. Finally, it contends that the district court erroneously declined to award an accounting of profits to deter a willful infringer. *See id.* at 54.

"Section 1117 makes an award of the infringing party's profits subject only to the principles of equity. Disgorgement exists to deter would-be infringers and to safeguard against unjust enrichment." *Masters*, 631 F.3d at 473. We have recognized that "[i]f a registered owner proves willful, deliberate infringement or deception, 'an accounting of profits may be based upon 1) unjust enrichment, 2) damages, or 3) deterrence of a willful infringer.'" *Minn. Pet Breeders, Inc.*, 41 F.3d at 1247 (quoting *Banff, Ltd. v. Colberts, Inc.*, 996 F.2d 33, 35 (2d Cir. 1993)).[5] Safeway's request for

---

[5]"A circuit split exists concerning whether a Lanham Act plaintiff must prove willful infringement, rather than mere infringement, to be eligible for monetary damages under 15 U.S.C. § 1125(a)." *Masters*, 631 F.3d at 471 n.2 ("assum[ing], without deciding, that willful infringement is a prerequisite of monetary relief" and holding sufficient evidence of willful infringement existed). Assuming, without deciding, "that Section 1117(a) generally does *not* require willfulness" for a plaintiff to recover under § 1117(a), willfulness remains an element of proving an award of profits "based on the deterrence rationale." *Safco Prods. Co. v. Welcom Prods., Inc.*, 799 F. Supp. 2d 967, 996 (D. Minn. 2011) (emphasis added). Indeed, the Second Circuit, from which we adopted the "'three categorically distinct rationales' for awarding a successful Lanham Act plaintiff an accounting for the defendant's profits," "consider[s] willfulness to suffice for an award of profits under the

disgorgement of profits is based on unjust enrichment and deterrence of a willful infringer. *See* Appellants' Br. at 42–54 (unjust enrichment); *id.* at 54–58 (deterrence of willful infringer).

### 1. *Unjust Enrichment*

Safeway argues that, in denying its request for disgorgement of profits, the district court (1) "erroneously placed the burden of proving the extent of [DPB's] unjust enrichment on Safeway Transit"; (2) "disregarded the substantial evidence of [DPB's] unjust enrichment"; (3) erroneously "punish[ed] Safeway Transit for failing to submit at trial evidence [of unjust enrichment that] [DPB] refused to produce in discovery"; and (4) "erred in concluding confusion was probably minimal." Appellants' Br. at iv, 48.

The district court briefly addressed unjust enrichment in its order. In analyzing the merits of Safeway's infringement claim, the district court had to determine whether a likelihood of confusion existed based on six factors. *See Safeway Transit LLC*, 334 F. Supp. 3d at 1006 (citing *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1009 (8th Cir. 2011) (setting forth the six likelihood-of-confusion factors)). The court found that "[o]nly the sixth factor favor[ed] DPB: there is no evidence of actual confusion, and DPB's limited use of the marks nearby the term 'Discount Party Bus' suggests that customer confusion, while likely, was nonetheless probably minimal." *Id.* at 1007. After determining that Safeway prevailed on the merits of its claim, the court addressed whether Safeway was entitled to a disgorgement of profits based on unjust enrichment. It stated, "Although proof of actual confusion is not always required, the Court's finding here—that confusion, while likely, was nonetheless probably

---

deterrence rationale." *4 Pillar Dynasty LLC v. New York & Co.*, 933 F.3d 202, 212–13 (2d Cir. 2019) (explaining that proof of actual confusion is not necessary under the deterrence rationale).

minimal—strongly suggests there was no unjust enrichment or damages, and Safeway advances no evidence or argument to the contrary." *Id.* at 1007–08 (internal citation omitted).

As the district court recognized, "equity does not require adherence to the putative judge-made rule *requiring* actual confusion." *Masters*, 631 F.3d at 473–74 (emphasis added). Although actual confusion is not *required*, it remains a relevant consideration in "a typical trademark case" involving "two products or services" in which "the plaintiff alleges that the defendant's mark or trade dress is confusingly similar to its own." *Id.* at 473. "Actual confusion in the marketplace is often considered the best evidence of likelihood of confusion." *John Allan Co. v. Craig Allen Co.*, 540 F.3d 1133, 1140 (10th Cir. 2008) (internal quotation omitted). Indeed, Safeway concedes that "[a]ctual confusion [is] a relevant consideration." Appellants' Br. at 41. As a result, actual confusion was a relevant factor for the district court to consider in determining whether DPB was unjustly enriched.

We conclude that the district court's "finding of no actual confusion"—and, as a result, no unjust enrichment—"was [not] clearly erroneous." *Vail Assocs., Inc. v. Vend-Tel-Co.*, 516 F.3d 853, 864 (10th Cir. 2008). On appeal, Safeway has offered no evidence of actual confusion to undermine the district court's unjust-enrichment finding.[6] Nor have they offered, for example, expert testimony "estimat[ing] gross

---

[6]Safeway argues that it "could not establish the full extent of [DPB's unjust enrichment at trial] because the Defendants had that evidence in their hands, and they failed or refused to produce it." Appellants' Br. at 48. It maintains that the district court punished them "for failing to submit at trial evidence [DPB] refused to produce in discovery." *Id.*

The record shows that, in response to Safeway's motion to compel, the district court ordered DPB to "conduct a diligent search of all documents and other information in their possession, custody, or control for information responsive" to four interrogatories. Order Granting in Part and Denying in Part Mot. to Compel at

-10-

revenues" or "net profits" to support their unjust-enrichment theory. *Masters*, 631 F.3d at 474. They instead chose to establish DPB's revenue by asking Fernandez how much he made in 2014 and 2015 based on tax returns that were produced to Safeway. When asked about particular figures from these tax returns, Fernandez replied, "That could be correct. I don't know off the top of my head. I mean, I have no idea." Restricted Trial Tr. at 2, *Safeway Transit LLC v. Disc. Party Bus, Inc.*, No. 0:15-cv-03701-JRT-HB (D. Minn. May 22, 2018), ECF No. 119. He also replied, "Again, I'm not sure. I don't keep my financials with me." *Id.* Safeway offered no other evidence to establish any revenue.

On appeal, Safeway has focused on evidence of DPB's infringement to support its unjust-enrichment theory. *See* Appellants' Br. at 46–47. The district court agreed with Safeway on the merits of its infringement claim, finding that DPB infringed on the marks. What the district court did not find, however, is that this infringement resulted in any unjust enrichment to DPB. For the foregoing reasons, we will not disturb this finding.

---

13–14, *Safeway Transit LLC v. Disc. Party Bus, Inc.*, No. 0:15-cv-03701-JRT-HB (D. Minn. Oct. 25, 2016), ECF No. 78. It directed DPB to "supplement [its] answers to those interrogatories under oath with any additional information yielded by th[e] search." *Id.* at 14. The court denied Safeway's request to "depose Kyle T. Peterson, the attorney who filed the trademark applications and ICANN proceedings on [DPB's] behalf." *Id.* at 4. It also denied Safeway's request for sanctions under Federal Rule of Civil Procedure 37. But the district court noted that it could "consider appropriate sanctions" should DPB "suddenly and belatedly discover something they should have discovered and produced months ago." *Id.* at 13.

Safeway has not appealed the district court's order on its motion to compel. Nor did it raise any issues with DPB's search or supplementation. Therefore, we will not address any issues relating to this discovery dispute.

We also conclude that the district court did not erroneously place the burden of proof on Safeway to prove unjust enrichment. Safeway bore the burden of proving DPB's sales. *See, e.g.*, *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1076 (9th Cir. 2015) ("The trademark holder has the burden to prove the defendant infringer's gross revenue from the infringement. Then the burden shifts to the defendant infringer to prove expenses that should be deducted from the gross revenue to arrive at the defendant infringer's lost profits." (internal citation omitted)). As we previously explained, Safeway produced insufficient evidence of DPB's gross revenue or net profits. Therefore, the burden never shifted to DPB to prove what expenses should be deducted from the gross revenue. *See id*.

## 2. *Deterrence of a Willful Infringer*

Safeway also challenges the district court's rejection of its request for an accounting of profits based on deterrence of a willful infringer. According to Safeway, the district court erred in concluding that an injunction was a sufficient remedy "because 1) [DPB] initially filed trademark registrations for the two marks in a deliberate effort to prevent Safeway Transit from using them and not to use the marks themselves; and 2) the court ignored Fernandez's testimony that he's ceased operating [DPB] and is trying to sell it." Appellants' Br. at 54–55 (internal citation omitted). Safeway asserts that "[t]he equities mandate a disgorgement of profits" based on the district court's findings "that Fernandez acted out of a desire 'to get even' in a 'vigilante attempt to wrest control of the marks from Safeway' after Safeway Transit built its goodwill and reputation on those marks." *Id.* at 56 (citation omitted).

"[A] court may award a defendant's profits solely upon a finding that the defendant fraudulently used the plaintiff's mark." *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1539 (2d Cir. 1992), *cited with approval in Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1122 n.10 (8th Cir. 1999). The rationale for awarding profits based on the defendant's fraudulent use of the plaintiff's mark is "to protect

the public at large. By awarding the profits of a *bad faith* infringer to the rightful owner of a mark, we promote the secondary effect of deterring public fraud regarding the source and quality of consumer goods and services." *Id.* (emphasis added). "[A] court may award a Lanham Act plaintiff an infringing defendant's profits upon a finding of bad faith, without additional proof of actual consumer confusion." *4 Pillar Dynasty LLC*, 933 F.3d at 212. "The deterrence rationale for disgorgement of profits . . . focuses on the culpability of the willful infringer . . . ." *Id.* at 213. And, "[e]ven when a plaintiff sustains its burden of proving willfulness [under the deterrence theory], courts should consider not only whether an enhanced profits award is appropriate, but also whether the disgorgement of *all* profits attributable to the infringing product is necessary to achieve the desired deterrent effect." *4 Pillar Dynasty LLC*, 933 F.3d at 214.

In addressing whether a disgorgement of profits was necessary to deter a willful infringer, the district court declined to address "whether DPB's infringement was willful" because it found "that DPB does not need to be deterred." *Safeway Transit LLC*, 334 F. Supp. 3d at 1008 & n.7. The court explained:

> [T]here is no evidence suggesting that an injunction prohibiting use of the marks is insufficient to satisfy the equities. To the contrary, the record—including Fernandez's testimony that his goal in registering the marks was to thwart Safeway from using them—suggests that Fernandez either genuinely thought the marks were his or simply sought to get even for Safeway's use of the DPB-related domains. Although the Court obviously cannot and does not condone such retaliation, it nonetheless concludes that an injunction is sufficient to deter DPB from future infringement of Safeway's marks.

*Id.* at 1008.

At first blush, the district court appears equivocal as to whether DPB acted in good faith when it registered the marks. Had this been the district court's only comments concerning deterrence, we might find a remand necessary to clarify the district court's position. However, when discussing whether to award attorney's fees to Safeway, the district court further stated:

> [T]he Court cannot conclude that Fernandez *deliberately acted unlawfully* given the Court's factual finding that DPB used the terms first. Fernandez testified that it was his understanding that he was *entitled to resume use of the marks*. Even if that conclusion was not the result of sound legal advice, the Court finds it a plausible explanation of the infringement.

*Id.* (emphases added).

These comments make clear that the district court actually found that DPB held a good faith belief in its right to use the trademarks. Thus, the district court's findings, when taken in their totality, support the court's conclusion that Safeway is not entitled to a disgorgement of profits based on deterrence.

### 3. *Defenses*

Safeway also argues that the district court abused its discretion in denying its request for disgorgement of profits because the court "implicitly and erroneously applied [the] equitable doctrines" of the "unclean hands defense and the advice of counsel defense." Appellants' Br. at 24.

"[T]he unclean hands doctrine *bars* a party that acted inequitably from *obtaining equitable relief* . . . ." *Slidell, Inc. v. Millennium Inorganic Chems., Inc.*, 460 F.3d 1047, 1058 (8th Cir. 2006) (emphases added) (applying Minnesota law). And, an advice-of-counsel defense is "an affirmative defense involving state of

-14-

mind." *Henry v. Quicken Loans, Inc.*, 263 F.R.D. 458, 468 (E.D. Mich. 2008). An "affirmative defense" is "[a] defendant's assertion of facts and arguments that, if true, will *defeat* the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." *Defense*, Black's Law Dictionary (11th ed. 2019) (emphasis added).

Here, DPB never raised the unclean hands defense or advice-of-counsel defense; and, as Safeway admits, the district court never said it was applying such defenses. *See* Appellants' Br. at 28 ("Without quite saying so, the District Court's order inserted an unclean hands defense into this lawsuit."); *id.* at 35 ("Without expressly invoking it, the District Court gave [DPB] the benefit of the advice-of-counsel defense."). Nor does the record reflect that the district court applied such defenses. Had it done so, it would not have awarded Safeway injunctive relief. Instead, the record shows that the district court balanced the equities in denying Safeway's request for a disgorgement of profits.

Accordingly, we hold that the district court did not abuse its discretion in denying Safeway's request for a disgorgement of profits.

## B. *Attorney's Fees*

Safeway contends that the district court erred in concluding that it was not entitled to an award of attorney's fees because this was not an exceptional case.

The Lanham Act provides that "[t]he court in *exceptional* cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a) (emphasis added). "'[E]xceptional,' as Congress used the word in . . . the Lanham Act, is most reasonably read to mean what the word is generally understood to indicate—uncommon, not run-of-the-mill." *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 526 (D.C. Cir. 1985).

[A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) (interpreting similar language in the patent statutes). A district court may "consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

Thus, "a district court may award fees in the *rare* case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 555 (emphasis added). "Where a defendant's unlawful conduct was willful and deliberate, the court may well determine that this is the type of exceptional case for which an award of attorney's fees is appropriate." *First Nat'l Bank in Sioux Falls v. First Nat'l Bank S.D.*, 679 F.3d 763, 771 (8th Cir. 2012) (internal quotations omitted).

We review for an abuse of discretion "[t]he district court's decision whether to award attorney's fees." *Id.* "Because the statute states that the court 'may' award attorney's fees in exceptional cases, the district court retains discretion as to the award of attorney's fees even if it finds a case to be exceptional." *Id.*

Here, the district court set forth the *Octane* factors. It then denied Safeway's request for attorney's fees. First, it concluded that Fernandez did not "deliberately

-16-

act[] unlawfully" because "DPB used the terms first." *Safeway Transit LLC*, 334 F. Supp. 3d at 1008. Second, the court found "plausible" Fernandez's "explanation of the infringement," which was "that it was his understanding that he was entitled to resume use of the marks." *Id.* Third, the court concluded that Safeway was "not an innocent actor" based on "the totality of the circumstances." *Id.* The court pointed to "Safeway's own bad acts" in its "equitable" inquiry. *Id.* For those reasons, the court expressly declined to find that Safeway's case was exceptional.

Safeway argues that "the District Court ignored overwhelming evidence of [DPB's] bad faith litigation tactics," evidencing the exceptional nature of the case, in denying its request for attorney's fees. Appellants' Br. at 62. In addition to citing DPB's filing of state and federal trademark registrations, Safeway also cites (1) the answer that DPB filed, which "ask[ed] [the district court] to award [DPB] Safeway Transit's two domains and to declare [DPB's] trademark registrations valid"; (2) DPB's filing of a "meritless counterclaim" that "regurgitate[d] . . . the 2014 lawsuit previously settled"; and (3) "[DPB's] discovery abuses—its concealment of its website traffic and development, the people it hired to build and run the infringing website and social media accounts, and evidence of its revenue and expenses." *Id.* at 65–66.

Safeway made similar arguments before the district court. The court found them unpersuasive. In its order, the district court expressly noted that a case may be exceptional based on "the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Safeway Transit LLC*, 334 F. Supp. 3d at 1008. Although the district court did not address Safeway's argument that DPB's litigation conduct warranted an award of attorney's fees, Safeway "thoroughly discussed this issue in [its] [trial brief and proposed order]. We may therefore presume that the district court considered this argument" before it denied Safeway's request for attorney's fees. *United States v. Farah*, 899 F.3d 608, 616 (8th

Cir. 2018), *cert. denied sub nom. Daud v. United States*, 139 S. Ct. 1275 (2019), *and cert. denied*, 139 S. Ct. 1275 (2019).

Furthermore, the district court presided over the case and was well aware of DPB's voluntary dismissal of its counterclaim. And, the district court was knowledgeable of the discovery disputes, having granted in part and denied in part Safeway's motion to compel. *See supra* n.5.

In summary, the district court, having presided over the bench trial, was intimately familiar with the facts of the case and was best suited to determine whether the case stood out as "exceptional." Even if the district court had determined that the case was exceptional, it would have still retained the discretion to deny Safeway's request for attorney's fees. *See First Nat'l Bank in Sioux Falls*, 679 F.3d at 771. We hold that the district court did not abuse its discretion in denying Safeway's request for attorney's fees.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

STRAS, Circuit Judge, concurring in part and dissenting in part.

I join all but Part II.B. of the court's opinion. The court's analysis on the attorney-fees issue is a reach. To have enough to go on for "meaningful appellate review," we need findings. *H & R Block Tax Servs. LLC v. Acevedo-Lopez*, 742 F.3d 1074, 1078 (8th Cir. 2014). Here, there are almost none. For example, although the district court alludes to Safeway Transit's "own bad acts," it does not tell us what they were. *See IPSCO Tubulars, Inc. v. Ajax TOCCO Magnathermic Corp.*, 779 F.3d 744, 751–52 (8th Cir. 2015) (remanding with instructions to "enter findings of fact and conclusions of law that enable this court to review [the district court's]

decision"). It does even less with Safeway Transit's allegations of bad-faith litigation conduct. It ignores them. But that is fine, the court says, because it must have considered each of the issues that Safeway Transit briefed, whether they were mentioned or not. *Cf. Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1975) (emphasizing that discretionary decisions are not "shielded from thorough appellate review"). I would not give the district court credit for work that it did not do. *See Cody v. Hillard*, 139 F.3d 1197, 1199–1200 (8th Cir. 1998) (remanding because it was unclear whether the district court "ignored the evidence" or just "considered [it] inconsequential"). With so many question marks, I would remand for findings.

_____